UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,
    PLAINTIFF,

v.

JORGE ALBERTO LOPEZ-RODRIGUEZ,
    DEFENDANT.

CASE NO.:17-22 (DRD)

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS INDICTMENT DUE TO UNLAWFUL DEPORTATION

    Jorge Alberto Lopez-Rodriguez ("Mr. Lopez-Rodriguez") represented by the Federal Public Defender for the District of Puerto Rico, through the undersigned attorney, respectfully states and requests as follows.

### Introduction

    Mr. Lopez-Rodriquez was charged in a single count indictment with illegal re-entry, in violation of 8 U.S.C. § 1326. D.E. 11. An essential element of this offense is a valid removal from the United States. As Mr. Lopez-Rodriguez's only removal order failed to comport with the Fifth Amendment of the U.S. Constitution, he filed a motion to dismiss the indictment. D.E. 41. The government filed an opposition, and a motions hearing was held over the course of three days. D.E. 49, 53, 54, & 62.

    At the motions hearing the evidence demonstrated that Mr. Lopez-Rodriguez was ordered removed, *in absentia*, from the United States in 2004. The evidence further indicated that Mr. Lopez-Rodriquez was not present at the immigration court hearing because neither the immigration service nor the Department of Homeland Security ("DHS") issued proper notice of his hearing.

    This failure to provide notice, was a fundamental procedural error that resulted in a removal order that fails to comport with Due Process. Mr. Lopez-Rodriguez was prejudiced by this error because he was in fact eligible for relief from deportation in the form of voluntary departure. Nonetheless, because he was not provided notice, he was deported in absentia, and ordered removed to Honduras.

1

What is more, the evidence at the hearing demonstrated that the deportation order was marred by other fundamental procedural errors. Ineffective assistance of counsel denied Mr. Lopez-Rodriguez due process, as well as the government's failure to preserve an audible record of the removal hearing.

As the result of these fundamental and prejudicial procedural errors Mr. Lopez-Rodriguez is exempt from the section 1326(d) exhaustion requirement and was effectively denied judicial review. As such, the entry of the 2004 deportation order was fundamentally unfair and cannot serve as the predicate removal in the current prosecution. As all other removal orders are reinstatements of the original 2004 order, the government does not have a valid deportation order to rely upon in this section 1326 prosecution. The indictment against Mr. Lopez-Rodriguez, therefore, must be dismissed.

## Summary of the Evidence

**I. Mr. Lopez-Rodriguez was not provided with notice of the March 2, 2004, removal hearing nor informed of possible forms of relief.**

Mr. Lopez-Rodriguez repeatedly testified, over a period of two days, that he was never informed of his immigration options, the pending hearing, hearing date, available forms of relief, or of the consequences of failing to appear.

**a. The Brownsville Border Patrol Agents did not inform Mr. Lopez-Rodriguez of the March 2, 2004, removal hearing; they intimidated him into signing documents while in custody.**

Mr. Lopez-Rodriguez provided detailed and unimpeached testimony regarding his arrest and detention at the Brownsville Border Patrol Station ("BBPS") on September 27-28, 2003. Hearing Tr. Pg. 14-15, 11-9, Aug. 7, 2017. In contrast, the government relies on Form I-862— a Notice to Appear which was never translated into Spanish— to prove that Mr. Lopez-Rodriguez received notice.

The government's only evidence that Mr. Lopez-Rodriguez received proper notice of the March 2, 2004, removal hearing, is Joint Exhibit 2, an untranslated, English language, Notice to Appear form from 2003. The government presented the testimony of CBP Agent Juan Batista, who testified that Mr. Lopez-Rodriguez's Alien File did not contain a Spanish version of the 2003 Notice to Appear. Hearing Tr. Pg. 93, 2-21, Aug. 9, 2017. He also testified that he was not at the BBPS when Mr. Lopez-Rodriguez was detained in 2003, that he has never communicated with any of the

agents involved in that 2003 detention, and that his testimony was based solely on his interpretation of the Alien File. Hearing Tr. Pg. 65-66, 25-20, Aug. 7, 2017In contrast, Mr. Lopez-Rodriguez testified that after his arrest, he was accused of being a member of a gang, and then was left alone in a cell. *Id*. Later, officers came back to his cell and "they made me sign all of the documents. And some hours passed. They went to where I was and they told me to leave. They took me outside and they told me to leave." *Id*.

The documents Mr. Lopez-Rodriguez signed were for the most part in English. *Id*. He testified that he did not read or write English but signed the documents because "they had me – I was intimidated by them. They told me they were going to lock me up. *Id*.

During cross-examination the government also questioned Mr. Lopez-Rodriguez about the paperwork signed at the BBPS. Hearing Tr. Pg. 9-10, 6-1, Aug. 8, 2017. The government explicitly asked if a border patrol agent by the name of Roberto Rodriguez translated the English language forms into Spanish. *Id*. Mr. Lopez-Rodriguez answered, clearly, "No. He made me sign and didn't explain anything." *Id*. He went on to explain that the he was locked in a cell by himself, and that "when they came in, they would come in aggressively and accuse me of something that wasn't true. And when they came in with paperwork, they were aggressive. They would just say, sign here." *Id*.

Mr. Lopez-Rodriguez did note that some of the conversations with Border Patrol Agents took place in Spanish. Hearing Tr. Pg. 49-50, 21-4, Aug. 8, 2017. However, he repeated, time and time again, that the English language forms were not read to him in Spanish. *Id*.

As mentioned above, out of fear and intimidation, Mr. Lopez-Rodriguez did initial a Spanish language document without reading it. Hearing Tr. Pg. 15, 7-14, Aug. 8, 2017. However, the Spanish document that he initialed failed to provide notice. *See*, Joint Exhibit 3. It lacked information regarding the upcoming hearing, including the date and time, location, and the consequences of failing to appear. *Id*. The English language form, on the other hand, did contain relevant information pertaining to the upcoming hearing—yet this document was never translated into Spanish.

3

Mr. Lopez-Rodriguez also credibly testified that no immigration official or border patrol agent informed him of the availability of voluntary departure. Hearing Tr. Pg. 20-21, 11-2, Aug. 7, 2017. What a voluntary departure was—was not explained to him. *Id*. Nor was he informed of his option to choose a voluntary departure. *Id*.

In the end, the evidence demonstrated that Mr. Lopez-Rodriguez was never provided notice of his March 2, 2004, immigration hearing, and as a result, did not go. What is more, the agents at the BBPS did not provide Mr. Lopez-Rodriguez with an explanation of possible forms of relief.

### b. Francisco Portillo never told Mr. Lopez-Rodriguez about the Immigration hearing.

The evidence shows that after his release from immigration custody, Mr. Lopez-Rodriguez demonstrated his wish to stay in the U.S. legally by hiring a man he thought to be a lawyer, Francisco Portillo. Hearing Tr. Pg. 29-30, 23-14, Aug. 7, 2017. Mr. Lopez- Rodriguez, went to Mr. Portillo's office in February of 2004. *Id*. During this meeting, Mr. Lopez-Rodriguez provided his address to the supposed lawyer—who charged him to submit a change of address form. Hearing Tr. Pg. 31-32, 20-13, Aug. 7, 2017. At no point during this meeting was Mr. Lopez-Rodriguez advised that he had an immigration hearing scheduled for the next month. *Id*.

### c. Mr. Lopez-Rodriguez first learned of the 2004 removal hearing, and its results, in 2007.

Evidence at the hearing showed that Mr. Lopez-Rodriguez first learned that he had been ordered removed in 2004, in December of 2007. Hearing Tr. Pg. 21, 5-10, Aug. 7, 2017. Mr. Lopez-Rodriguez was building houses at an army base, in Georgia, when he was pulled over for not wearing a seatbelt. Hearing Tr. Pg. 48-49, 4-21, Aug. 7, 2017. He was issued a traffic citation and given a court date. *Id*. Mr. Lopez-Rodriguez appeared at that court date, and it was at that moment that he was first told about the 2004 order of removal. As he testified "I was given a ticket, and I went to court. When I went to court to pay for the ticket, the officer, he told me that that license number did not exist. And I told him that must be a mistake because it was a legal license." *Id*. He went on to explain that, "I insisted that there was a mistake because I had paid a lawyer to fix my status for me." *Id*.

4

### d. But for the lack of notice Mr. Lopez-Rodriguez would have attended his removal hearing.

"Aliens facing deportation are entitled to due process under the Fifth Amendment to the United States Constitution, encompassing a full and fair hearing and a notice of that hearing." *Dobrata v. INS*, 311 F.3d 1206, 1210 (9th Cir. 2002); *Farhoud v. INS,* 122 f.3D 794, 796 (9th Cir. 1997). Courts have held that the right of a person facing deportation to participate meaningfully in the deportation proceedings by having them competently translated into a language he or she can understand is fundamental." *Hartooni v. INS*, 21F.3d 336,340 (9th Cir.1994) (citing *Tejeda-Mata v. Immigration and Naturalization Service*, 626 F.2d 721 (9th Cir.1980)),*cert.denied* 456 U.S. 994(1982)); *see also Sterkaj v. Gonzales*, 439 F.3d 273,279 (6th Cir.2006); *Marincas v. Lewis*, 92 F.3d 195, 204 (3d Cir.1996); *Nazarova v. INS,* 171 F.3d 478,484(7thCir.1999); *Augustin v. Sava*, 735 F.2d 32,37 (2d Cir.1984).

Ultimately, this Court must make a credibility determination. The evidence heard by the court lends itself to the conclusion that if notified of the March 2004 hearing, Mr. Lopez-Rodriguez would have attended. As mentioned above, Mr. Lopez Rodriguez, prior to the scheduled hearing, hired a man he thought to be a lawyer to assist him. This demonstrates to the Court his wish to comply with the process.

Further, this Court heard testimony regarding Mr. Lopez-Rodriguez's willingness and desire to comply with immigration law. On July 22, 2006, he appeared, on time, to an appointment with the U.S. Citizenship and Immigration Services ("USCIS"), to have his biometrics taken. Joint Exhibit 7, I-797 Notice of Action. At that meeting, immigration officers at the USCIS office did not inform him of the 2004 removal order. This reinforced his belief that his immigration process was going well. When questioned by the court as to why he believed the 2006 interview was a success, Mr. Lopez-Rodriguez answered, "Because I assumed that going in, going in to the immigration office with the document and to come back out, I assumed that the process was going well. That it's fine." Hearing Tr. Pg. 45, 10-15, Aug. 7, 2017.

As mentioned above, approximately a year and a half later, in the fall of 2007, Mr. Lopez-Rodriguez was pulled over for a traffic violation. He was issued a ticket

and voluntarily walked into a courthouse in Georgia, in hopes of resolving a traffic citation.

It is unreasonable to believe that someone who is attempting to evade authorities would repeatedly present themselves to the very authorities he is trying to evade. The only reasonable interpretation is that Mr. Lopez-Rodriguez—when he walked into the USCIS office on July 22, 2006 and the Georgia courthouse in December 2007—was not aware that an order of removal had been issued in 2004. It is clear that he was not living in the shadows.

**II. Mr. Lopez-Rodriguez's due process rights were violated by Francisco Portillo's ineffective assistance of counsel: he failed to inform him of the upcoming removal hearing, failed to file a change of address with the immigration court, failed to advise him that a voluntary departure was an available form of relief, and filed fraudulent applications on Mr. Lopez-Rodriguez's behalf.**

While there is no constitutional right to counsel in deportation proceedings, *See Castro-Nuno v. INS,* 577 F.2d 577, 578 (9th Cir. 1978), due process must be accorded. *See United States v. Barraza-Leon*, 575 F.2d 218, 220 (9th *Cir. 1978)*. "Ineffective assistance of counsel in a deportation proceeding is a denial of due process under the Fifth Amendment if the proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting his case." *Ramirez–Durazo v. INS,* 794 F.2d 491, 499–500 (9th Cir.1986) (quoting *Lopez v. INS,* 775 F.2d 1015, 1017 (9th Cir.1985))

Francisco Portillo defrauded Mr. Lopez-Rodriguez by lying about being an attorney. Hearing Tr. Pg. 29-32, 23-13, Aug. 7, 2017. His deficient representation adversely affected the outcome of the March 2, 2004, Removal Hearing because Mr. Lopez-Rodriguez, if advised by Francisco Portillo, would have attended the hearing and would have requested a voluntary departure—relief he was eligible for.

Mr. Lopez-Rodriguez testified that he hired Francisco Portillo in February of 2004, and that he relied on him because he believed Portillo was an attorney. *Id*. Portillo charged Mr. Lopez-Rodriguez over $400, on multiple occasions. *Id*. At one point, Portillo filed a fraudulent TPS and Work Permit Application on Mr. Lopez-Rodriguez's behalf. *Id*. Mr. Lopez-Rodriguez was not familiar with U.S. immigration law and had no choice but to trust that Francisco Portillo was acting in his best

interest, "Well, since I did not know, I thought that he was telling me the truth." Hearing Tr. Pg. 34, 10-20, Aug. 7, 2017.

Mr. Lopez-Rodriguez also testified that Francisco Portillo never informed him that he was eligible for a voluntary departure. Hearing Tr. Pg. 53, 1-12, Aug. 7, 2017.In fact, Mr. Lopez-Rodriguez first learned of a voluntary departure in 2007— during a conversation with an immigration officer while in immigration custody in Atlanta, Georgia— "He explained to me what voluntary departure was. But if somebody would have explained to me and I would have taken that decision, I could legally apply for citizenship from my country." Hearing Tr. Pg. 21, 5-10, Aug. 7, 2017. He went on to explain that had he known of the hearing, his father would have given him money to get to Houston. Hearing Tr. Pg. 53-54, 13-13, Aug. 7, 2017.

### III. Mr. Lopez Rodriguez was denied due process because the government failed to **preserve a reviewable record of the removal hearing for judicial review, in violation of its own regulations and of Due Process.**

If judicial review of the removal proceedings is precluded by the absence of the recording, the requirements of Due Process articulated by the Supreme Court in *Mendoza-Lopez* cannot be met. *See U.S. v. Medina*, 236 F.3d 1028, 1032 (9th Cir. 2001 ("Without a contemporaneous recording, the hearing lacks a key element of an adjudicatory proceeding: a means to preserve a record for later appellate review."); *see also Cortes-Acosta v. I.N.S.,* 234 F.3d 476, 482 (9th Cir. 2000). The absence of a discernible recording clearly "alters the nature of judicial review." *Medina*, 236 F.3d at 1032.

Courts have recently found the government's failure to preserve the audio recording of a removal proceeding for appellate review is a due process violation. In *Singh v. Holder*, 638 F.3d 1196, 1208 (9th Cir. 2011), the court concluded, despite the agency's determination that production of the audio recording was not required, that due process mandated preservation, and production of the audio record of bond proceedings in Immigration Court.

Under its own regulations, the government has an affirmative obligation to keep a record of all of the removal proceedings. The regulations state in mandatory terms: "The hearing *shall* be recorded verbatim except for statements made off the record with the permission of the immigration judge." 8 C.F.R. § 1240.9 (emphasis added); *see also generally Lexecon Inc. v. Millberg Weiss Bershad Hynes & Lerach*,

7

523 U.S. 26, 35 (1998) ("'[T]he mandatory 'shall' . . . normally creates an obligation impervious to judicial discretion.'"); *Serv. Employees Int'l Union v. United States*, 598 F.3d 1110, 1113 (9th Cir. 2010) ("'The word 'shall' is ordinarily 'The language of command.'"'"). This command is stated not once but twice in the regulations, as it is also reiterated in 8 C.F.R. §1240.47.

In this case the only record of the proceeding is the 2004 Order of Removal which states that removability was established because, "The Immigration and Naturalization Services submitted documentary evidence relating to the respondent…" No such documentation has been provided, and no audible recording was preserved; which is both a violation of the government's own regulations and a violation of due process as established by case law.

IV. **Mr. Lopez-Rodriguez suffered clear and cognizable prejudice from all of the due process violations.**

To satisfy a showing of prejudice, an "alien does not have to show that he actually would have been granted relief. Instead, he must only show that there is a reasonable likelihood that he would have received relief from deportation." *See United States v. Luna,* at 312.

Numerous courts have found an alien proved prejudice on a collateral attack in a prosecution under 8 U.S.C. § 1326 when they were denied their right to apply for voluntary departure. *See, e.g., United States v. Basulto-Pulido*, 219 Fed. Appx. 717, 719 (9th Cir. 2007)(district court erred in denying motion to dismiss indictment, because Immigration Judge failed to advise defendant about right to voluntary departure; reversing district court's denial of motion); *United States v. Nungaray Rubalcaba*, 228 Fed. Appx. 436, 438 (9th Cir. 2007)(district court erred in denying motion to dismiss indictment, because Immigration Judge failed to advise defendant about his eligibility for voluntary departure; reversing district court's denial of motion); *United States v. Alonza-Mendoza*, 239 Fed. Appx. 330 (9th Cir. 2007)(holding that defendant's due process rights were violated when the Immigration Judge did not individually inform him of his right to fast-track voluntary departure under 8 U.S.C. § 1229c(a) and his right to appeal).

Here, the failure of the immigration officials to advise Mr. Lopez-Rodriguez of his right to voluntary departure is a direct result of DHS to issue proper notice of the deportation hearing to Mr. Lopez-Rodriguez. Had Mr. Lopez-Rodriguez known of

the date, time, and location, he would have shown up to apply for this important relief. The failure of the DHS to properly notice the hearing date and time accordingly prejudiced Mr. Lopez-Rodriguez.

V. **Mr. Lopez-Rodriguez should be deemed exempt from the exhaustion bar because he never received notice of his deportation hearing, the government failed to preserve a reviewable record of the removal hearing, and he was a victim of ineffective assistance of counsel (8 U.S.C. § 1326(d)(1).**

Theoretically, a defendant can exhaust all available relief following a deportation order by appealing the decision to the Board of Immigration Appeals and filing habeas petitions. But more often than not, when courts consider § 1326(d)'s first two prongs — exhaustion and judicial review — they ask whether the waiver of the right to appeal was considered or intelligent. *See Mendoza-Lopez*, 481 U.S. at 840-842. As the Second Circuit explained,

> [A]n invalid waiver of the right to administrative exhaustion will often result from the same lack of understanding that renders a waiver of judicial review invalid. This was the case in *Mendoza-Lopez* itself, for example. There, the Court focused on the aliens' uninformed waivers of their rights to judicial review, but their misunderstanding as to the availability of Section 212(c) relief necessarily caused their waivers of administrative remedies to be invalid as well.

*United States v. Sosa*, 387 F.3d 131, 136 (2d Cir. 2004) (citing *Mendoza-Lopez*, 481 U.S. at 840). If a defect in the immigration proceedings rendered the waiver unintelligent or not considered, an alien is denied judicial review and exempt from the exhaustion requirement. *Mendoza-Lopez*, 481 U.S. at 840; *Sosa*, 387 F.3d at 136.

In order to reconcile *Mendoza-Lopez*'s holding with § 1326(d)'s exhaustion requirement, circuit courts have read a constitutional exception into the statutory requirement — where the waiver of appeal was not considered or intelligent, due process requires exemption from the exhaustion requirement. *See, e.g., United States v. Rojas-Pedroza*, 716 F.3d 1253, 1262 (9th Cir. 2013) ("the IJ's error excuses the alien from the administrative exhaustion requirement of § 1326(d)(1), because we deem the alien's waiver of the right to an administrative appeal to have been insufficiently 'considered and intelligent.' ") (internal citations omitted); *Sosa*, 387 F.3d at 136; *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1048 (9th Cir. 2004);

9

*United States v. Martinez-Rocha*, 337 F.3d 566, 570 (6th Cir. 2003) (applying the due process exception to the exhaustion requirement and holding that district court did not "err in deciding that the waiver at issue here met those criteria[.]").

As the Ninth Circuit articulated in *Ubaldo-Figueroa*, "[t]he exhaustion requirement of 8 U.S.C. § 1326(d), however, cannot bar collateral review of a deportation proceeding when the waiver of right to an administrative appeal did not comport with due process." 364 F.3d at 1048 (internal citation omitted). Thus, a "waiver of the right to appeal a removal order does not comport with due process when it is not considered and intelligent." *Id*.

While the First Circuit has never explicitly applied an exception, it has indicated that there are circumstances where due process violations would neutralize § 1326(d) exhaustion requirement. *United States v. Soto-Mateo*, 799 F.3d 117, 121 (1st Cir. 2015), *cert. denied,* 136 S. Ct. 1236 (2016) ("Assuming without deciding that due process concerns sometimes may warrant an exception to the statutory exhaustion requirement, the appellant's case would not qualify for such an exception.").

District courts in the First Circuit have explicitly held that a failure to appeal "must be excused where the failure occurred as a result of a due process violation and, thus, was not a knowing and intelligent waiver." *United States v. Boliero*, 923 F. Supp. 2d 319, 327-328 (D. Mass. 2013). The District Court of Massachusetts explained, "[i]n cases where the alien failed to appeal a deportation order because of a violation of due process, preventing a collateral attack on this deportation order when it is an element of a criminal offense would constitute a further denial of due process." *Id*. at 328. The court reasoned that there must be an exception to the exhaustion requirement because § 1326(d) was meant to codify the constitutional principles announced in *Medoza-Lopez*. *Id*. at 326.

In fact, when *Boliero* was appealed, the First Circuit specifically held that when an attorney's ineffective assistance, in the context of a deportation proceeding, violates due process, a defendant's failure to exhaust administrative remedies is excused. *See U.S. v. Boliero,* 923 F.Supp.2d. 319 (1st Cir. 2013).

To comply with the constitutional principles announced by the *Mendoza-Lopez* Court, a constitutional exception must be read into section 1326(d)'s exhaustion

10

requirement. As held by the Second, Ninth, and Sixth Circuit, and in accordance with persuasive dicta of the First Circuit, it follows that where a waiver is not considered or intelligent a defendant is exempt from the statute's exhaustion requirement.

Here, DHS did not provide Mr. Lopez-Rodriguez with oral notice in a language which he understood. Similarly, Francisco Portillo ineffective assistance had a direct effect on Mr. Lopez-Rodriguez's ability to exhaust all remedies available to him. Had he been properly noticed, Mr. Lopez-Rodriguez would have attended the 2004 immigration proceeding and would have had a meaningful opportunity to participate in his immigration proceedings. Francisco Portillo was hired to assist Mr. Lopez-Rodriguez in the immigration process. He led Mr. Lopez-Rodriguez to believe he was an attorney. Francisco Portillo should have filed a motion for a change of address, he should have petitioned to change venue to Miami, and he should have ensured that Mr. Lopez-Rodriguez was aware of the upcoming immigration hearing. Mr. Lopez-Rodriguez relied on Francisco Portillo to guide him through the complex immigration system. Instead, Francisco Portillo defrauded him and prevented him from attaining relief he was entitled to.

### VI. Mr. Lopez-Rodriguez was deprived of an opportunity for Judicial Review. (8 U.S.C. § 1326(d)(2).

Like the exemption analysis, when considering the second prong of § 1326(d) – judicial review – the relevant inquiry is whether an error in the immigration proceeding rendered the waiver of the right to appeal unintelligent or not considered. *Mendoza-Lopez*, 481 U.S. at 840-842 ("Because the waivers of their rights to appeal were not considered or intelligent, respondents were deprived of judicial review of their deportation proceeding."); *Luna*, 436 F.3d at 319 (explaining "[t]he Supreme Court held that an IJ's failure to adequately explain the availability of relief, resulting in an uninformed waiver of the right to appeal, was an error that deprived the individuals in that case of their opportunity for judicial review.").[1] A defendant

---

[1] The First Circuit has held on several occasions that "a defendant who deliberately and voluntarily waived his right to appeal a prior deportation order under the advice of counsel, is not deprived of meaningful judicial review and thus may not collaterally attack the deportation order during the § 1326 criminal proceedings." *United States v. Smith*, 36 F.3d 128, 130 (1st Cir. 1994); *United States v. Smith*, 14 F.3d 662, 665 (1st Cir. 1994); *United States v. Vieira-Candelario*, 6 F.3d 12, 15 (1st Cir. 1993). The First Circuit has not,

11

is functionally deprived of judicial review if a fundamental error in the immigration proceeding renders the waiver of the right to appeal unintelligent or not considered. *Mendoza-Lopez*, 481 U.S. at 840-842; *Luna*, 436 F.3d at 319.

Here, Mr. Lopez-Rodriguez was ordered removed *in absentia*, at a hearing he was never informed of. The lack of adequate notice of the date and time of his immigration hearing precluded him from presenting and arguing defenses to removal. Therefore, because Mr. Lopez-Rodriguez had neither the time nor the ability to exhaust his administrative remedies, he was also deprived of an opportunity for judicial review.

## Conclusion

Mr. Lopez-Rodriguez's 2004 Order of Removal violated the Fifth Amendment to the U.S. Constitution. Mr. Lopez-Rodriguez was not properly noticed of the 2004 Removal Hearing, received ineffective assistance of counsel, and the government failed to preserve a reviewable record of the 2004 hearing. The severity of these errors rendered any waivers of appeal invalid, denying Mr. Lopez-Rodriguez judicial review and exempting him from the exhaustion requirement. Each error, alone and together, deprived Mr. Lopez-Rodriguez of the due process guaranteed to him by the U.S. Constitution. Therefore, the 2004 removal order cannot serve as a predicate removal to the offense charged. Because all subsequent removals were reinstatements of the original 2004 order, the government does not have a valid removal order to rely upon in this Section 1326(a)(2) prosecution. As such, the indictment against Mr. Lopez-Rodriguez must be dismissed.

Accordingly, Mr. Lopez-Rodriguez respectfully requests that this Honorable Court dismiss the indictment.

**I HEREBY CERTIFY** that on this date I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the parties of record.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, August 23, 2017.

---

however, specifically enumerated procedural errors that are so fundamental as to effectively deny an alien of judicial review.

**ERIC A. VOS, ESQ.**
**Federal Public Defender**
**District of Puerto Rico**

S/J<span>UAN</span> J. M<span>ICHELEN</span>
Juan J. Michelen,
Assistant Federal Public Defender,
USDC-PR G02601
241 F.D. Roosevelt Avenue
San Juan, PR 00918-2305
Phone No. (787) 281-4922
Juan_Michelen@fd.org

S/L<span>AUREN</span> E.S. R<span>OSEN</span>
Lauren E.S. Rosen
Research and Writing Specialist
USDC-PR G02415
241 F.D. Roosevelt Avenue
San Juan, PR 00918-2305
Phone No. (787) 281-4922
lauren_rosen@fd.org