# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br>Plaintiff,<br><br>v.<br><br>**JORGE ALBERTO LOPEZ-RODRIGUEZ,**<br>Defendant. | **CRIMINAL NO.** 17-022(DRD) |

## UNITED STATES' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS INDICTMENT

TO THE HONORABLE COURT:

The United States, by and through the undersigned attorneys, respectfully states and prays as follows:

### I. Introduction

The United States hereby responds to defendant Jorge Alberto Lopez-Rodriguez's collateral attack on defendant's prior removal order in absentia issued by an immigration judge. During the motion hearing held on August 7, 8, and 9, 2017, the defendant failed to establish that he did not receive proper notice of the hearing of the underlying removal, thus the defendant cannot collaterally attack his deportation for fundamental unfairness and prejudice. The Court therefore should deny defendant's motion to dismiss the Indictment.

### II. Factual Background

Defendant Lopez-Rodriguez is a citizen of Honduras who has repeatedly entered the United States illegally over the past decade. On January 18, 2017, the defendant was indicted pursuant to violations under 8 U.S.C. § 1326 for illegal reentry into United States after having been ordered removed in 2004 and 2010, for illegal entries into the United States. (ECF Docket No. 11).

On September 27, 2003, United States Customs and Border Protection (CBP) apprehended the defendant near Brownsville, Texas, as he attempted to enter the United States without inspection. (Joint Exhibit 1, Form I-213 continued as I-831 Record of Deportable/Inadmissible Alien, dated September 28, 2003). At the time of detention, the defendant provided as false name (Jorge Alberto Rodriguez-Maldonado) and his father's address. *Id.* On September 28, 2003, the defendant was issued a Notice to Appear (NTA) that provided the date (March 2, 2004), time (10am), and location (Houston, Texas) of his removal proceedings. (Joint Exhibit 2, Form I-862 Notice to Appear issued on September 28, 2003). The defendant accepted service of the NTA and signed the document upon receipt. *Id.* Further, the defendant was notified of his rights in writing and in the Spanish language. (Joint Exhibit 3, Form I-826 *Notificacion de Derechos y Solicitud de Resolucion* (Notification of Rights and Request for Decision signed by defendant and dated on September 28, 2003); and ECF Docket No. 56-1 (certified translation). At the time, the defendant was also provided a list of free legal service providers. (Joint Exhibit 4, List of Free Legal Service Providers, signed by defendant dated September 28, 2003).

On March 2, 2004, an immigration judge ordered defendant's removal from the United States in absentia. (Joint Exhibit 8, Respondent in Removal Proceedings Decision, Case No. A97-315-923 dated March 2, 2004). He was issued a warrant of removal or deportation. (Joint Exhibit 6, Form I-205 Warrant of Removal/Deportation, dated May 1, 2004). The defendant was barred from reentry to the United States for a period of ten years. (ECF Docket No. 49-1, Exhibit 7, Form I-294 Warning to Alien Ordered Removed or Deported, dated May 1, 2004).

At some point during the following couple of years, while in the United States, the defendant filed for permission to work and to seek protected status. On December 14, 2006, defendant's request

for permission to accept employment and application for temporary protected status were both denied. (Joint Exhibit 5, Form I-765, Application for Employment Authorization and Form I-821 Application for Temporary Protected Status). Later on December 17, 2007, Lopez- Rodriguez was physically deported to Tegucigalpa, Honduras.

On September 2, 2010, the Jim Well's County Sheriff's Department apprehended the defendant near Alice, Texas. (ECF Docket No. 49-1, Exhibit 10, Form I-213 continued as I-830 Record of Deportable/Inadmissible Alien, dated on September 2, 2010). The defendant had once again reentered illegally into the United States without inspection. *Id.* The Jim Well's County Sheriff's Department transferred custody of the defendant to CBP for immigration processing. *Id.* On that same date, CBP reinstated the Immigration Court's prior deportation order and served the defendant with the Notice to Reinstate Prior Order in which the defendant checked the box indicating that he did not wish to contest his prior removal order. (Government Exhibit 1, Form I-871 Notice of Intent/Decision to Reinstate Prior Order, signed September 2, 2010). At the time of detention, Lopez-Rodriguez expressed fear for his life if he returned to Honduras. (ECF Docket No. 49-1, Exhibit 10, Record of Deportable/Inadmissible Alien, I-213 continued as I-830, dated on September 2, 2010). However, the defendant expressly acknowledged that he did not wish to contest the underlying determination of removal. (Government Exhibit 1, Form I-871 Notice of Intent/Decision to Reinstate Prior Order, dated September 2, 2010). On November 17, 2010, the defendant was given Form M-488 (Information about Reasonable Fear Interview), which explained his right to seek protection from removal based on fear of torture or prosecution, however, the defendant expressly stated that he was no longer afraid to return to his country. (ECF Docket No. 49-1, Exhibit 12, Withdrawal of Request for Reasonable Fear Determination, signed by defendant and dated

November 17, 2010). The defendant was also provided written information in Spanish pertaining to the reasonable fear. (Government Exhibit 5, Form M-488 *Informacion sobre la entrevista relativa al temor razonable* (Information pertaining to interview of reasonable fear) signed by defendant and dated on November 17, 2010; and Exhibit 5-a (certified translation), At the time, the defendant was given a list of free legal service providers. (Government Exhibit 3, List of Free Legal Service Providers, signed by defendant). On December 10, 2010, the defendant was ordered removed from the United States. (Government Exhibit 4, Form I-205 Warrant of Removal/Deportation, dated December 10, 2010). On December 19, 2010, the Lopez Rodriguez was physically deported to Honduras from Harlan, Texas.

On January 1, 2017, CBP encountered the defendant, while at the Luis Munoz Marin International Airport in Carolina, Puerto Rico, as he was attempting to board a Southwest Airline's flight, bound to Ft. Lauderdale, Florida. (ECF Docket No. 1-1, Affidavit for Criminal Complaint). During the CBP examination process, the defendant informed CBP officers that he is a native of Honduras and that he had entered illegally through McAllen, Texas on January 17, 2011. *Id.* During CBP officers' examination of the defendant's immigration status by means of his passport and fingerprints, they encountered information pertaining to his prior deportations. *Id.* Based on these findings, the defendant was advised of his Miranda rights, which he elected not to waive. *Id.* Subsequently, the defendant was charged for a violation of 8 U.S.C. § 1326(a)(2). (ECF Docket No. 11).

On July 12, 2017, defendant Lopez-Rodriguez filed a motion to dismiss based on a collateral attack of his first deportation proceedings. (ECF Docket No. 41). The motions hearing was held

during August 7-9, 2017. (ECF Docket Nos. 68-70). On August 23, 2017, the defendant file a Memorandum of Points and Authorities in Support of Motion to Dismiss Indictment. (ECF Docket No. 71).

### III. Legal Analysis

**A. Defendant has not satisfied the statutory requirements to collaterally attack his underlying removal as mandated by 8 U.S.C. § 1326 (d)**

A defendant who "has been denied admission, excluded, deported, or removed" from the United States commits a crime, in pertinent part, if the alien "enters, attempts to enter, or is at any time found in, the United States." 8 U.S.C. § 1326(a). See, *United States v. Luna,* 436 F.3d 312, 317 (1st Cir. 2006); *United States v. Adame-Orozco,* 607 F.3d 647, 651 (10th Cir. 2010)("Section 1326(d) ... permits the defendant-alien the chance to mount a collateral attack against a prior deportation order in response to an illegal entry prosecution - but only in certain circumstances."); *United States v. Arita-Campos,* 607 F.3d 487, 491 (7th Cir. 2010). "Because the underlying removal order serves as a predicate element of an illegal reentry offense under § 1326, a defendant charged with that offense may collaterally attack the removal order under the due process clause." *United States v. Pallares-Galan*, 359 F.3d 1088, 1095 (9th Cir. 2004) (citing, *United States v. Mendoza-Lopez*, 481 U.S. 828, 837-38 (1987)). However, Congress has "strictly limited an alien's ability to bring a collateral challenge" to a deportation or removal order. *United States v. Vidal- Mendoza*, 705 F.3d 1012, 1014-15 (9th Cir. 2013).

Section 1326(d) sets forth a three-part test, and requires a defendant-alien to establish: 1) that he exhausted any administrative remedies that may have been available to seek relief against the order; 2) that the deportation proceedings at which the order was issued improperly deprived him of the

opportunity for judicial review; and 3) that the removal order was fundamentally unfair. 8 U.S.C. § 1326(d). *United States v. Ubaldo-Figueroa,* 364 F.3d 1042, 1048 (9th Cir. 2004). See also, *Mendoza-Lopez*, 481 U.S. at 837-38. As noted previously, the First Circuit has stated that "[t]hese elements are in the conjunctive; therefore, a defendant must satisfy all of them to successfully attack his removal order." *Luna*, 436 F.3d at 317; See also *Arita-Campos*, 607 F.3d at 491 ("Several circuits have held that because the three requirements are stated in the conjunctive, a defendant must satisfy all three prongs to prevail in his collateral attack."

**The defendant has the burden to show each of the three elements to lodge a successful attack on a deportation order.** (Emphasis added). See *Richardson v. United States,* 558 F.3d 216, 221-222 (3d Cir. 2009); *United States v. Roque-Espinoza*, 338 F.3d 724, 728 (7th Cir. 2003); *United States v. Wilson*, 316 3d 506, 509 (4th Cir. 2003); and *United States v. Fernandez-Antonia*, 278 F.3d 150, 157 (2d Cir. 2002). As noted by the Tenth Circuit Court of Appeals: "[b]ecause a final deportation order enjoys a presumption of regularity, once the government shows that the alien was deported while such an order was outstanding, the burden shifts to the defendant-alien, and it is he who must prove each of §1326(d)'s elements to overcome the presumed legality of the earlier deportation order." *Adame-Orozco*, 607 F.3d at 651.

In this case, the defendant fails on all three prongs set forth in §1326(d), and can therefore not succeed on his claim. Because the defendant fundamentally bases his claim in lack of notice of the hearing of the underlying deportation, which equates with fundamental unfairness and prejudice, we will discuss the third prong first.

_____*INTENTIONALY LEFT BLANK*_____

**1.     Entry of deportation order was not fundamentally unfair and defendant suffered no actual prejudice**

To satisfy this prong, the defendant must establish "both that the 'deportation proceeding violate[d] [his] due process rights' and that the violation caused prejudice." *United States v. Leon-Leon*, 35 F.3d 1428, 1431 (9th Cir. 1994). Fundamental fairness relates to procedural due process. *United States v. Lopez-Vasquez*, 227 F.3d 476, 484 (5th Cir. 2000). Fundamental error must be an error that renders the proceeding so unfair that it violates the Due Process Clause. *United States v. Torres-Sanchez*, 68 F.3d 227, 230 (8th Cir. 1995). The First Circuit has held that §1326(d)(3) requires a showing of prejudice. An alien "must show prejudice in the sense of a reasonable likelihood that the result would have been different if the error in the deportation proceeding had not occurred." *United States v. Loaisiga*, 104 F.3d 484, 487 (1st Cir. 1997). As a result, the entry of a fundamentally unfair deportation order occurs where there is both a fundamental defect in the proceeding and prejudice as a result. *United States v. Charleswell*, 456 F.3d 347, 358 (3d Cir. 2006); *United States v. Perez,* 330 F.3d 97, 103 (2d Cir. 2003); *Fernandez-Antonia*, 278 F.3d at 159; *Torres-Sanchez*, 68 F.3d at 230; and *Luna*, 436 F.3d at 319.

In an attempt to undermine the clear and obvious notice provided to the defendant pertaining to his underlying removal hearing, the defendant offers only his testimony while relaying an inconsistent and unbelievable set of facts. The testimony provided by the defendant during the hearing confirmed that during the underlying removal proceedings, the defendant was unequivocally served with a Notice to Appear (NTA) on September 28, 2003. The defendant acknowledged and recognized his signature in the form. (Hearing Transcript August 7, 2017, pp. 19-20). However, the defendant sustains that he was forced into signing the documents and that he did not understand

what he was signing because it was in English. (Hearing Transcript August 7, 2017, p. 14-15). Defendant's testimony was plagued with ambiguous, contradictory, untruthful and self-serving statements regarding the events that occurred during his illegal entry into the United States on 2003. The defendant claims that he came looking for a better future for his family so he was in route to his father's address in the United States. (Hearing Transcript August 7, 2017, p. 9). Defendant sustains that upon crossing the border he ran into and surrendered to an immigration patroller because the police in Mexico had kidnapped him. *Id*. Defendant claims that once at the immigration station he was accused of "gangero" (gang-member) and he was placed in a separate room. (Hearing Transcript August 7, 2017, p. 11). Yet none of the documents contained in the A-file pertaining to defendant's detention on September 2003 refer to any suspicion or interrogation regarding defendant's gang affiliation. The defendant stated that he did not have any tattoos or markings distinctive of gang members. (Hearing Transcript, August 7, 2017, p. 14). Then, according to defendant, the immigration agents stepped out of the room and came back with some documents for him to sign. (Hearing Transcript August 7, 2017, p. 14). The defendant claims that he signed the documents in English (which he does not understand) and in Spanish (which he did not read) because he was intimidated since he was told that he was going to be locked up. (Hearing Transcript August 7, 2017, p. 16). However, defendant was not forced or threatened to put his father's address in one of the documents. (Hearing Transcript, August 8, 2017, p. 11). The only address provided by the defendant was his father's address. (Hearing Transcript, August 8, 2017, p. 7, 24). Subsequently, without providing any explanation, information or instructions to the defendant, the same agents that threatened him with five (5) years of incarceration took the defendant outside and asked him to leave. (Hearing Transcript, August 8, 2017, pp. 11, 50-51).

However, all CBP agents go to a one-month basic Spanish course except for those Spanish-speaking native that successfully approve a Spanish test. (Hearing Transcript, August 9, 2017, p. 29).

The defendant admitted that the patrol officer that encountered them at the border was speaking to them in Spanish. (Hearing Transcript August 7, 2017, p. 17). However, during direct examination the defendant stated that none of the other immigration agents spoke in Spanish. (Hearing Transcript August 7, 2017, p. 18). The defendant stated that an immigration agent accused him of being a "gangero" and threaten him while at the immigration station. (Hearing Transcript August 7, 2017, p. 11, 15). During cross-examination the defendant admitted that the interviewing immigration agent was speaking to him in Spanish. (Hearing Transcript, August 8, 2017, p. 6-7; August 8, 2017, pp. 19-24, 49-50). When questioned about his signature to the effect that he was provided oral notice in Spanish, the defendant stated that he did not understand the notice back then minutes admitting that the interview was conducted in Spanish. (Hearing Transcript, August 8, 2017, pp. 12-13).

Agent Juan E. Batista, CBP Criminal Investigator testified that the manner business is conducted as part of the protocol when a person is detained by immigration authorities the interview is conducted in the defendant or detainee's native language. (Hearing Transcript August 9, 2017, p. 17, 27). Form 213 containing the narrative of the patrol agent who detained the defendant was signed by patrol agent Roberto Rodriguez. (Hearing Transcript August 9, 2017, p. 18). Agent Batista testified that in the regular course of business the signature next to the name is that of the agent that fill out the document. *Id.* In fact, the document states in the certificate of service that the notice was read by the defendant. (Hearing Transcript, August 9, 2017, p. 31). The statements is consistent

with defendant's admission that he can read in Spanish since he graduated from eight grade. (Hearing Transcript, August 8, 2017, p. 8-9, 37-38). The form signed by the defendant has a check mark choosing the option of an audience in front of an immigration judge to resolve the matter pertaining his stay or removal from the United States. ((Hearing Transcript August 9, 2017, p. 32). This is consistent with defendant's testimony regarding his intention for coming to the United States, seeking a better future for his family and reuniting with his father living in Texas. (Hearing Transcript August 7, 2017, p. 9; August 8, 2017, p. 10). Agent Batista testified that in the regular course of business the detainee is provided with all the details of the removal hearing, including, address, date and time. (Hearing Transcript, August 9, 2017, p. 23).

The defendant admits that he stay in Texas for only a couple of weeks. (Hearing Transcript August 7, 2017, p. 25). If defendant desired legal counsel but could not afford it, he could have contacted legal counsel from the "list of qualified attorneys and organizations who may be available to represent [him] at no cost" was provided with the notice. The defendant could have contacted free legal representation from the list provided with the notice. (Exhibit 4, List of Free Legal Service Providers, signed by defendant dated September 28, 2003). Instead, the defendant opted for traveling with his father to Florida totally disregarding the hearing scheduled of March 2, 2004. *Id.*

The defendant knew that he was ordered to appear for his removal hearing but he voluntarily failed to show up. The defendant provided a false name during his entry to the country in March. (Hearing Transcript August 7, 2017, p. 11). Agent Juan E. Batista testified that he had noticed that Jorge Lopez-Maldonado and Jorge Lopez-Rodriguez were the same person and that he had been assigned two different A-file numbers. (Hearing Transcript August 9, 2017, p. 11, 21). Defendant

knew that he had provided a false name to the immigration agents, (Hearing Transcript, August 7, 2017, p. 10; August 8, 2017, pp. 14-15, 44-45), which could make more difficult his future apprehension.

Defendant cannot show that the issuance of his removal order was fundamentally unfair or that he suffered unfair prejudice as a result of the removal order. Defendant points to prejudice in this case deriving from his removal without any opportunity to proper counsel based on an alleged innuendo regarding his reliance on the alleged fraudulently representation of an individual by the name of Francisco Portillo. (Hearing Transcript, August 7, 2017, p. 29-47). The United States resubmits its previous arguments to the effect that these allegations are self-serving, untimely and uncorroborated.

The defendant did not appeal. (Transcript Hearing, August 9, 2017, p. 56). Assuming arguendo that defendant's removal order somehow was fundamentally unfair because he was deprived of a right to appeal the order, defendant has not established that the outcome of his proceeding would have been any different had he appealed the order. He therefore failed to carry his burden of establishing prejudice. The defendant claims that his father would have given him the money to travel to Texas and attend the hearing (Hearing Transcript, August 7, 2017, p. 53-54) or that he would have voluntarily departed. (Hearing Transcript, August 7, 2017, p. 54). The defendant acknowledged his initials (using a false last name) requesting a hearing in a document in Spanish which also contained the alternative to go back to his country of origin in a voluntarily manner. (Hearing Transcript, August 8, 2017, pp. 14-19). Lopez-Rodriguez's testimony blatantly shows that he never had the intention to appear at the removal hearing principally because:

1) the defendant provided a false name (Lopez-Maldonado) to the authorities when detained while entering Texas; (Hearing Transcript, August 8, 2017, p 7); making it harder to locate him;

2) within a couple of weeks he moved to another state (Florida)(Hearing Transcript, August 7, 2017, p. 25);

3) the defendant did not file a change of address with the immigration court; (Hearing Transcript, August 8, 2017, p. 30);

4) the defendant failed to appear to the removal hearing on March 2, 2004;

5) it was not until months later that he applied for an employment permit in another state (Florida) now using his given name different from the false name given at entry and a different alien number (Hearing Transcript, August 7, 2017, p. 41; August 8, 2017, p. 38);

6) when the defendant was arrested in Atlanta he was in possession of a false driver's license[1] (Hearing Transcript, August 7, 2017, p. 49);

7) the defendant knew that he had not been granted any permit to work or for temporary protected status (Hearing Transcript, August 8, 2017, p. 62), and

8) after being detained twice (2007 and 2010), the defendant never challenged his initial removal on lack of notice or any other grounds or opened an administrative complaint regarding that matter. (Hearing Transcript, August 8, 2017, p. 43).

For essentially all the reasons previously discussed, the defendant plainly cannot satisfy this standard.

    **2.    Defendant failure to exhaust his administrative remedies**

The defendant argues that he could not exhaust remedies because he was never aware of the removal order entered in the hearing of the underlying removal. The United States resubmits that the defendant was fully aware of the removal hearing, and of his rights, including free legal counsel and voluntarily departure. However, the defendant chose to move with his girlfriend to Florida and not attend the hearing of a proceeding to which after all he had provided a false name and an address where he was no longer residing.

---

[1] The defendant refers to a document that he allegedly used to obtain his driver's license. Similar to another document with a "torch." (Hearing Transcript, August 8, 2017, p. 59). However, the document has not been produced by the defendant and it is not contained within the defendant's A-file. (Hearing Transcript, August 8, 2017, p.p.38-40.

The defendant has not demonstrated that he exhausted all of his administrative remedies in this case. Although all three elements must be proven, when "performing the collateral attack analysis under §1326(d), [an inquiring] court ordinarily should address the initial test of exhaustion of administrative remedies before going on to the other two tests.[2] *United States v. Soto- Mateo,* 799 F.3d 117, 120 (1st Cir. 2015) (A failure to appeal immigration judge's removal order to Board of Immigration Appeals constitutes a failure to exhaust administrative remedies as required to collaterally attack a deportation order) (citing *United States v. DeLeon*, 444 F.3d 41, 48 (1st Cir. 2006).

Instead of following the instructions given in the notice to appear, and the instructions given in Spanish by the interviewing immigration agents following the normal course of business during detention of aliens (Hearing Transcript, August 9, 2017, p. 17), the defendant voluntarily chose to move to Miami, Florida and skip the hearing set for March 2, 2004. The immigration judge conducted a hearing in absentia pursuant to section 240(b)(5)(A) of the Immigration and Nationality Act. (Joint Exhibit 8, Respondent in Removal Proceedings Decision, Case No. A97-315-923 dated March 2, 2004). Defendant's failure to appear constituted an abandonment of any pending applications and any applications the defendant might have been eligible to file at the time.

The First Circuit has never recognized an exception to the requirement that a defendant must have exhausted all administrative remedies in order to make a successful claim under 8 U.S.C. 1326(d). Defendant had an obligation to contest his removal at the time his removal order was issued using all available administrative remedies. Further, the defendant did not contest the underlying removal order. (Government Exhibit 1, Form I-871 Notice of Intent/Decision to Reinstate Prior

---

[2] For purposes of this Memorandum, the United States discusses the third prong before since the defendant seems to based his collateral attack mainly in the lack of notice of the hearing for the underlying removal order and thus, he was prevented from exhausting administrative remedies and complying with judicial review.

Order, dated September 2, 2010). Defendant failed to do so and now, thirteen (13) years later, challenges his deportation order when, given the passage of time, the government is not in a position to counter defendant's uncorroborated claims.

### 3. Defendant did not satisfy the judicial review requirement

The defendant has not established that the deportation proceeding improperly deprived him of an opportunity for judicial review. The defendant sustains that he did not receive proper notice of the removal hearing and was unfairly ordered removed in absentia. (ECF Docket No. 41, p. 12). However, as previously stated, the defendant signed a written notice of the hearing. The evidence presented at the hearing demonstrated that when an illegal alien is detain, such as in the instant case, the normal course of business is that before release of the alien the immigration agent informs the detainee in his native language the details of his removal hearing to include place, date and time; the consequences of not attending the proceeding; his rights pertaining to legal representation and voluntarily departure; and the consequences of his failure to appear at the hearing. (Hearing Transcript, August 9, 2017, p. 17, 22,-24, 27-28) Both the defendant and the immigration agent signed the corresponding forms to attest to compliance with this procedure. (Hearing Transcript, August 9, 2017, p. 18, 28). Later, the defendant did not attend the hearing in Texas because he move to Miami, Florida. (Hearing Transcript, August 7, 2017, p. 25). Defendant did not bother to inform of his move or change of address. The Government submits that the defendant was fully aware of the 2003 removal hearing, but never had the intention to appear since he had provided a false name and moved to another state. The defendant fails to show any exceptional circumstances for failing to appear at the removal hearing other than a conveniently crafted story about abuse and miscommunication by non-Spanish speaking immigration agents at the border of Mexico and Texas.

The defendant is now seeking the judicial review that he failed to pursue more than thirteen (13) years ago when he had the opportunity. Defendant was thus not denied an opportunity to seek judicial review, but instead simply failed to pursue such review after the final order.

Defendant was removed from the United States in 2007 and subsequently in 2010. Defendant did not question the validity of his removal order nor filed a motion to reopen with the Immigration Court. There is no record of any Motion to Reopen the proceedings filed with the Immigration Court.

### IV. Conclusion

In the Motion to Dismiss the Indictment the defendant fails to present any valid argument or evidence to support a finding that his due process rights were violated during the underlying removal proceeding.

**WHEREFORE,** the United States hereby requests that the defendant's Motion for Dismissal be DENIED.

**RESPECTULLY SUBMITTED**.

In San Juan, Puerto Rico, this day 31st of August 2017.

                                            **ROSA EMILIA RODRIGUEZ-VÉLEZ**
                                            United States Attorney

                                            *s/Evelyn M. Canals* Evelyn M. Canals
                                            U.S.D.C. No. 207107
                                            Assistant U.S. Attorney
                                            U.S. Attorney's Office
                                            Torre Chardón, Suite 1201
                                            # 350 Carlos Chardón Ave.
                                             San Juan, P.R. 00918
                                            Tel. (787) 766-5656
                                            evelyn.m.canals@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record as selected in the electronic system.

*s/Evelyn M. Canals*
Evelyn M. Canals
U.S.D.C. No. 207107
Assistant U.S. Attorney