# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>**Plaintiff**,<br><br>v.<br><br>JORGE ALBERTO LÓPEZ-RODRÍGUEZ,<br><br>**Defendant**. | **Crim. Case No.** 17-0022 (DRD) |

## OPINION AND ORDER

Pending before the Court is Defendant, Jorge Alberto López Rodríguez' (hereinafter, "Defendant") *Motion to Dismiss Indictment Due to Unlawful Deportation* (Docket No. 41), which has been opposed by the USA (Docket No. 49). For the reasons stated herein, the Court **DENIES** Defendant's request for dismissal of indictment.

### I. FACTUAL AND PROCEDURAL OVERVIEW

On September 27, 2003, Defendant entered the United States illegally through Brownsville, Texas, by crossing the Río Grande River after traveling for approximately two (2) months from his country, Honduras. Upon his arrival to US territory, the United States Border Patrol (hereinafter, "USBP") apprehended him along with a minor. Although Defendant identified the minor as his brother upon his apprehension, they are not related. Upon his detention, he provided a false name "Jorge Alberto López-Maldonado" and his father's address.[1] On September 28, 2013, Defendant was served a Notice to Appear, which ordered him to appear before an immigration judge in Houston, Texas on March 2, 2004 at

---

[1] Pursuant to Defendant's testimony, he provided his father's address as he was going to find him upon his arrival to the United States. *See* Transcript of Proceedings, August 7, 2017, Docket No. 68, p. 9, L. 6-8.

1

10:00 a.m. to his removal proceedings. *See* Docket No. 49-1, pp. 4-5. A Certificate of Service on the reverse side of the document confirmed that Defendant was "provided oral notice in the Spanish language of the time and place of his hearing and of the consequences of failure to appear as provided in section 240(b)(7) of the Act." Defendant accepted service of the official document; and signed and placed his right index fingerprint upon its receipt. *Id*.

Defendant was further served an official document in Spanish wherein he was notified of the following rights:

> You have been detained because the Immigration Service is of the opinion that you are in the United States illegally. You have the right to hearing before the Immigration Court, in order to decide if you may remain in the United States. In the event that you request this hearing, you may be detained or entitled to release on bail until the hearing date. <u>You have the option to request the return to your country as soon as possible without a hearing.</u>
>
> You have the right to contact an attorney or other legal representative to represent you at the hearing, or to reply to any question regarding your rights pursuant to the law in the United States. <u>If you request it, the official who has delivered this Notification will give you a list of the juridical associations that could represent you free or [sic] charge or at low cost</u>. You have the right to contact your country's consular or diplomatic service. You may use the telephone to call an attorney or other legal representative, or a consular official at any time prior to your departure from the United States. (Emphasis ours).

*See* Docket No. 56-1, p. 3. Defendant signed the document upon its receipt[2]. He was also served a List of Free Legal Service Providers, which Defendant signed and placed his right index fingerprint upon its receipt. *See* Docket No. 49-1, p. 7.

The official document further included a Request of Resolution, which was filled out by Defendant by placing his initials on the first option, which stated the following: "I request

---

[2] Defendant testified that he graduated from eight grade back in Honduras. Hence, the Court can conclude that Defendant knows how to read and write in Spanish. *See* Transcript of Proceedings, August 8, 2017, Docket No. 69, pp. 8-9.

a hearing before the Immigration Court that resolves whether I may or not remain in the United States". He also signed the document upon its receipt with the date of September 28, 2003. The other options for resolution were the following:

> I consider that I would be at risk if I return to my country. My case shall be transferred to the Immigration Court for a hearing.
>
> I admit that I am in the United States illegally and do not consider that I would be at risk if I return to my country. <u>I waive my right to a hearing before the Immigration Court. I wish to return to my country as soon as my departure can be scheduled</u>. I understand that I may remain detained until my departure. (Emphasis ours).

*See* Docket No. 56-1, p. 4. Although Defendant's testimony is that upon his arrival to the United States, he wanted to return home, he did not choose the option that provided such remedy. Instead, he chose to try to remain in the United States, which is consistent with all of his subsequent actions.[3]

Furthermore, the document also included a Certificate of Service, wherein there was confirmation that USBP agent, Roberto Rodríguez read the notice to Defendant in the Spanish language. *See* Docket No. 49-6. After he was interviewed and procedural paperwork was filled out and given to Defendant, he was released with a citation to appear before the Immigration Court for March 2, 2004. The Court notes that Defendant did not contact any of the free legal service providers from the list that was handed to him upon his release. *See* Docket No. 49-1, p. 7.[4]

---

[3] Q. Now when you say you turned yourself in, what do you mean by that?
A. Well, because we were tired of the journey. The other guy and I, we had been at it for, like two months, and we just wanted to go home.
Q. Even though you had already made it to the U.S.?
A. Yes, sir. *See* Transcript of Proceedings August 7, 2017, Docket No. 68, p. 9, L. 16-20. [But he was then in Houston, Texas where his father resided.]
[4] The document contains Defendant's signature, date and right index fingerprint as confirmation of its receipt.

Pursuant to Defendant's testimony, upon his release he went to his father's house in Houston, Texas, where he remained for a couple of weeks. *See* Docket No. 68, p. 25, L. 7-10. He then decided to move to Miami looking for better job opportunities. *Id.* at L. 14-15. The Court notes that Defendant did not attend to his March 2, 2004 hearing before the Immigration Court. Accordingly, the immigration court ordered Defendant's removal from the United States *in absentia*. *See* Docket No. 49-1, p. 9. In May 1, 2004, a Warrant of Removal/Deportation was issued against Defendant. *See* Docket No. 49-1, p. 11.

At some point after his arrival to Miami, Defendant submitted before the Immigration and Naturalization Service an Application for Employment Authorization, Form I-765 (Docket No. 49-1, p. 14) and, an Application for Temporary Protected Status, Form I-821 with a false address and telephone number (*Id.* at 17).[5] On December 14, 2006, Defendant's requests for permission to work and seeking protected status were denied. *Id.* By December 17, 2007, Defendant was deported to Honduras. *See* Docket No. 49-1, p. 12.

Later, in August 2010, Defendant re-entered the United States illegally without inspection by crossing the Río Grande River. As he was apprehended, Defendant was checked on the system, which confirmed that he was removed from the United States on December 2007. Consequently, an official Notice of Intent/Decision to Reinstate Prior Order was prepared by the USBP agent, Ameli Dávila which was explained to Defendant in the Spanish language. Defendant confirmed that he would not make a statement contesting the

---

[5] The Court notes that no document has been produced that confirms Defendant's alleged efforts to change his address before the Immigration Court.

determination by signing the document. *See* Docket No. 49-1, p. 26.  He was arrested and eventually deported from the United States as a re-entry on December 29, 2010.[6]

Notwithstanding the fact that he was fully aware of the prohibition to re-enter the United States, on January 17, 2011, Defendant re-entered the United States illegally a third time without inspection through McAllen, Texas by crossing the Río Grande River. Defendant moved and began working in Florida remaining in the United States until the end of 2016. Defendant then traveled to San Juan, Puerto Rico. As he was returning to Miami, Florida from the Luis Muñoz Marín International Airport, Defendant was encountered by Customs Border Patrol Officers at TSA Terminal A Checkpoint. *See* Docket No. 41, pp. 32-38. Consequently, Defendant was arrested and later charged with an indictment for illegal re-entry to the United States, in violation of 8 U.S.C. § 1326(a)(2).

Pending before the Court is Defendant's *Motion to Dismiss Indictment Due to Unlawful Deportation* (Docket No. 41). A hearing on the merits was held between August 7 and 9. The parties also submitted *Memorandum of Points and Authorities in Support of Motion to Dismiss Indictment Due to Unlawful Deportation* (Docket No. 71) and *United States' Memorandum in Opposition to Defendant's Motion to Dismiss Indictment* (Docket No. 74) in order to properly assert their positions. However, a ruling on this matter requires a careful scrutiny of the underlying legal framework.

---

[6] Although Defendant initially stated that he feared for his safety if he returned to Honduras, he withdrew his request for reasonable fear determination on November 2010. Defendant signed all of these official documents. *See* Docket No. 49-1, pp. 27-29.

## II.     APPLICABLE LAW

### A. Immigration Provisions Pursuant to 8 U.S.C. § 1326

"Any alien who has been denied admission, excluded, deported or removed… from the United States… and thereafter enters, attempts to enter, or is at any time found in, the United States" is committing a crime and is subject to "be fined under Title 18, or imprisoned not more than 2 years, or both". 8 U.S.C. § 1326(a). "A defendant facing a charge of illegal reentry after removal may, under some circumstances, challenge the validity of the underlying order of removal." United States v. Soto-Mateo, 799 F.3d 117, 120 (1st Cir. 2015), cert. denied, 136 S. Ct. 1236, 194 L. Ed. 2d 230 (2016). See United States v. Luna, 436 F.3d 312, 317 (1st Cir. 2006), 8 U.S.C. § 1326(d). In his challenge, Defendant must demonstrate that:

> "(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
> (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
> (3) the entry of the order was fundamentally unfair."

8 U.S.C. § 1326(d). "These elements are in the conjunctive; therefore, a defendant must satisfy all of them to successfully attack his removal order." United States v. Luna, 436 F.3d 312, 317 (1st Cir. 2006), *see also* United States v. Roque-Espinoza, 338 F.3d 724, 728 (7th Cir.2003); United States v. Wilson, 316 F.3d 506, 509 (4th Cir. 2003); United States v. Fernandez-Antonia, 278 F.3d 150, 157 (2d Cir.2002); United States v. Lepore, 304 F.Supp.2d 183, 186 (D.Mass.2004). "But it is the defendant's burden if he wishes to collaterally attack an underlying deportation order." United States v. Arita-Campos, 607 F.3d 487, 490 (7th Cir. 2010). "The burden of proof in a collateral attack on a deportation order is on a defendant based on the presumption of regularity that attaches to a final deportation order." United

States v. Arevalo–Tavares, 210 F.3d 1198, 1200 (10th Cir.2000). The Court will discuss each prong that must be met by Defendant in order to attack his removal order, individually.

1) **Exhaustion of administrative remedies that may have been available to seek relief against the order:**

The First Circuit has held that "[i]n performing the collateral attack analysis under § 1326(d), the court ordinarily should address the initial test of exhaustion of administrative remedies before going on to the other two tests." DeLeon, 444 F.3d at 45. As to the first prong in § 1326(d), "an alien must have filed a motion to reopen, appealed to the Board of Immigration Appeals, and pursued all other administrative remedies available to him". Arita-Campos, 607 F.3d at 491.

Furthermore, the First Circuit's precedent holds that, ". . . a failure to follow these procedures, including a failure to file a motion to reopen, will result in the inability to challenge the deportation order." *Id.* Failure to appeal a deportation order of an immigration judge to Board of Immigration Appeals constitutes a failure of exhaust administrative remedies that precludes collateral attack on deportation order underlying illegal reentry charge. *See* U.S. v. De Leon, 444 F.3d 41, 50 (1st Cir. 2006).

2) **Deportation proceedings at which the order was issued improperly deprived the alien the opportunity for judicial review:**

An alien accused of reentering United States after deportation may collaterally attack deportation order if he can show deprivation of opportunity for meaningful judicial review of that deportation order. *See* U.S. v. Smith, 36 F.3d 128 (1st Cir. 1994), 8 U.S.C. § 1326. Notwithstanding, Congress did not intend to permit an alien to challenge the validity of prior deportation in prosecution for reentry after deportation. *See* United States v. Mendoza-Lopez, 107 S. Ct. 2148 (1987). "Defendants charged under § 1326 can preclude the

government from relying on a prior deportation if the deportation proceeding was so procedurally flawed that it "effectively eliminate[d] the right of the alien to obtain judicial review."' United States v. Alvarado-Delgado, 98 F.3d 492, 493 (9th Cir. 1996)(quoting Mendoza-Lopez, 107 S.Ct. at 2156).

Defendant contends that since there is an absence of the removal proceedings recordings, the requirements of Due Process cannot be met. However, "the lack of transcript availability clearly does not invalidate use of a prior deportation to establish the deportation as an element necessary to prove the crime. Whatever papers and oral testimony exist may well serve adequately to accomplish the collateral review. . ." United States v. Palacios-Martinez, 845 F.2d 89, 91 (5th Cir. 1988).

### 3) The entry of the order was fundamentally unfair:

"To establish that a deportation proceeding was fundamentally unfair, an alien must show both that there was a fundamental defect in the proceeding and that the defect caused him prejudice." Richardson v. United States, 558 F.3d 216, 224 (3d Cir. 2009); *see also* United States v. Charleswell, 456 F.3d 347, 358 (3d Cir. 2006). "An alien can show that the proceedings had a fundamental defect by demonstrating either that he was deprived of a substantive liberty or property interest or that the INS violated procedural protections "such that the proceeding is rendered fundamentally unfair."' *Id.* (quoting Charleswell, 456 F.3d at 358). Furthermore, "[a] defendant who seeks to exclude evidence of a deportation order in a prosecution under 8 U.S.C. § 1326 must do more than demonstrate deprivation of the right to a direct appeal from that order. The defendant also bears the burden of proving prejudice." United States v. Proa-Tovar, 975 F.2d 592, 595 (9th Cir. 1992).

The First Circuit has resolved that ". . . the establishment of a fundamentally unfair hearing in violation of due process requires a showing both of a fundamental procedural error and that the error caused prejudice; an error cannot render a proceeding fundamentally unfair unless that error resulted in prejudice." United States v. Torres-Sanchez, 68 F.3d 227, 230 (8th Cir. 1995); *see* United States v. Polanco–Gomez, 841 F.2d 235, 237 (8th Cir.1988). Prejudice in a deportation proceeding is present when it "may well have resulted in a deportation that would not have otherwise occurred." United States v. Santos-Vanegas, 878 F.2d 247, 251 (8th Cir. 1989).

### III. LEGAL ANALYSIS

The Court held a hearing between August 7 and 9 in which it had the opportunity to listen to Defendant's testimony. Among the information provided by Defendant that is fatal to his request for dismissal is the following:

a. Defendant acknowledged the USBP officer who apprehended him at the border spoke Spanish[7];

b. Defendant acknowledged that upon his apprehension on September 27th, 2003 he provided a false name to the USBP[8];

c. Defendant admitted that a USBP officer interviewed him in Spanish upon his apprehension on September 27th, 2003[9];

d. Defendant provided his father's address to the USBP officer[10] although he moved to Florida within two weeks[11];

---

[7] *See* Transcript of Proceedings, August 7, 2017, Docket No. 68, p. 17, L. 3-11
[8] *See* Transcript of Proceedings, August 8, 2017, Docket No. 69, p. 3, L. 15-20.
[9] *Id.* at p. 6, L. 20-25.
[10] *See* Transcript of Proceedings, August 7, 2017, Docket No. 68, pp. 21-23.
[11] *Id.* at p. 25, L. 6-19.

e. Defendant did not file a change of address request with the immigration court upon his relocation in Florida[12];

f. Defendant failed to appear to his removal hearing on March 2, 2004 even when he was served a Notice to Appear with the specific date, time and place of the hearing[13];

g. Sometime later, while in Florida, he applied for temporary protected status and permission to work in the United States providing a name different from the false name given when he arrived to the United States on August 27, 2003[14];

h. When applying his requests for temporary protected status and permission to work in the United States he provided a false address and telephone number[15];

i. In 2007, Defendant was arrested in Atlanta, Georgia while in possession of a false driver's license[16];

j. Defendant never challenged his initial removal on any grounds or opened an administrative complaint regarding this matter in any of his previous detentions[17].

Although Defendant argues that he could not exhaust the administrative remedies to attack his order of removal, since he was not informed of his rights and the removal proceedings, upon the evaluation of Defendant's testimony and the evidence submitted by

---

[12] *See* Transcript of Proceedings, August 8, 2017, Docket No. 69, p. 30, L. 4-21.
[13] On August 28, 2003, USBP Agent Roberto Rodríguez provided Defendant a Notice to Appear which he signed with a false name and placed his right index fingerprint upon its receipt. Such document stated that it was served in person, and "[t]he alien was provided oral notice in the Spanish language of the time and place of his or her hearing and of the consequences of failure to appear as provided by section 240(b)(7) of the Act. Docket No. 49-1, pp. 5-6; *see also* Transcript of Proceedings, August 8, 2017, p. 29, L. 11-18. [Notwithstanding, Defendant's allegations that he does not speak English, the Court notes that the difference between March in the English and Spanish language is minimal, and easily noticeable and, the day, year and time are the same in English and Spanish.
[14] *See* Docket No. 58-1, pp. 17-23. The appearance at a private office is consistent with the selection he made with his initials at his Request for Resolution document to remain and seek work in the United States. *See* Docket No. 49-1, p. 6.
[15] *Id.*
[16] *See* Transcript of Proceedings, August 7, 2017, Docket No. 68, pp. 48-49.
[17] *Id.* at p. 43, L. 11-13.

10

the parties, the Court finds that Defendant knew of the removal hearing and its implications. The official documents demonstrate that the USBP officer interviewed Defendant in Spanish, and he was informed of his rights, the option of voluntary departure, and the availability of free legal counsel[18].

The Court notes that Defendant moved within two weeks to Florida without informing his change of address to the immigration court. Hence, Defendant's actions prevented the authorities from contacting him. The Court further finds that although Defendant testified that he did not understand any of the information provided to him upon his detention, all his subsequent actions upon his release are coincidently seeking to remain in the United States, as stated in the Request for Resolution[19], including his visit to Mr. Portillo to obtain temporary protected status.[20]

Moreover, even if Defendant alleges that he was not properly informed of his rights and removal proceedings until his arrest in Atlanta, Georgia in 2007, he never challenged his removal from the United States on any grounds or opened any administrative complaints regarding his allegations. There is no recognized exception to the requirement of exhausting administrative remedies prior to challenging a deportation order. However, Defendant re-entered the United States illegally on two (2) additional occasions, August 29, 2010[21] and January 17, 2011[22], fully aware of the prohibitions issued because of his previous illegal entries. Defendant never made any efforts to try to resolve his illegal status from Honduras. Hence, the Court finds that Defendant's failure to exhaust administrative remedies that may

---

[18] *See* Transcript of Proceedings, August 8, 2017, Docket No. 69, p. 6, L. 20-25.
[19] Docket 49-1, p. 6.
[20] *See* infra fn 13 and accompanying text.
[21] *See* Docket No. 58-1, pp, 24-28.
[22] *See* Docket No. 41, pp. 32-38.

have been available to seek relief against the order were fatal to his request for dismissal of the instant indictment.

Additionally, Defendant argues that the deportation proceedings at which his removal order was issued improperly deprived him the opportunity for judicial review, as there are no recordings available of the removal hearing; hence, he was denied due process rights.[23] However, since the Fifth Circuit has already ruled that the lack of transcript does not invalidate the deportation proceedings and documents can be used to accomplish collateral review, the Court simply cannot entertain Defendant's argument. *See* United States v. Palacios-Martinez, 845 F.2d 89, 91 (5th Cir. 1988). The official documents, which were signed by Defendant, also containing his index fingerprint clearly, certify that Defendant was informed of his rights in Spanish.

Finally, as previously discussed, in order for the Court to determine that the entry of Defendant's deportation order was fundamentally unfair and in violation of due process, Defendant must prove that there was a fundamental procedural error, and that such error caused him prejudice. The specific prong is met by demonstrating that the deportation would not have otherwise occurred. *See* United States v. Torres-Sanchez, 68 F.3d 227, 230 (8th Cir. 1995); United States v. Santos-Vanegas, 878 F.2d 247, 251 (8th Cir. 1989). Defendant bases his claims on lack of notice of the hearing of the underlying deportation. During direct examination, Defendant stated that none of the immigration agents spoke Spanish. However, during his cross-examination, Defendant admitted that the patrol officer that apprehended

---

[23] Defendant further alleges that his due process rights were violated by Francisco Portillo's ineffective assistance of counsel. However, since Mr. Portillo was not one of the legal providers suggested by the USBP upon Defendant's release, the Court will not entertain these arguments.

him at the border spoke Spanish (Transcript of Proceedings, August 7, 2017, Docket No. 68, p. 17, L. 3-11) and the immigration agent who interviewed him also spoke Spanish (Transcript of Proceedings, August 8, 2017, Docket No. 69, p. 6, L. 20-25)[24]. Moreover, Defendant was served a Notice to Appear (Docket No. 49-1, p. 4) to his removal proceedings. Defendant signed placed his right index fingerprint on the document; and recognized his signature on the official document. He has failed to demonstrate a procedural error that could result in prejudice. Further, Defendant cannot demonstrate that the deportation would not have occurred as the United States had all the elements to deport Defendant even if he appeared at the removal hearing. Defendant entered the United States illegally and had no paperwork that could prevent him from being deported to Honduras.

For the reasons elucidated above, the Court finds that Defendant failed to satisfy all three (3) requirements necessary to invalidate the order of removal issued on May 1, 2004. Consequently, Defendant's *Motion to Dismiss Indictment Due to Unlawful Deportation* (Docket No. 41) is hereby **DENIED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 13th day of September, 2017.

*S/ Daniel R. Domínguez*
DANIEL R. DOMÍNGUEZ
United States District Judge

---

[24] The agent who certified the Spanish translation of his March 2, 2004 Notice to Appear was Agent Roberto Rodríguez, a person with a traditional Spanish first and last name. Moreover, Agent Juan E. Batista, CBP Criminal, witness for the USA, testified that the regular course of business is that if immigration authorities detain a person, the interview is conducted in the detainee's native language. *See* Transcript of Proceedings, August 9, 2017, Docket No. 70 pp. 17, 27.